ELBA MARÍA CORREA, ETC., Plaintiff and Appellant, *v.* HEIRS OF JUAN PIZÁ BISBAL, ETC., Defendants and Appellees.

No. 9047. Argued January 17, 1945.—Decided May 9, 1945.

*Luis Mercader* and *J. Córdova Rivera* for appellant. *E. Pérez Casalduc* for appellees.

MR. JUSTICE SNYDER delivered the opinion of the court.

---

This is a filiation suit by the plaintiff against the heirs of Juan Pizá Bisbal. The plaintiff alleges that she was born as a result of sexual relations had in 1917 between her mother and Pizá; that Pizá was at that time married to defendant María Salicrup Mesorana, whom he left as his widow when he died on May 23, 1943; that Pizá installed the mother of the plaintiff in a home of her own after she became pregnant, and visited her there; that Pizá conducted himself as the father of the plaintiff after the latter was born until some months before his death, both by supporting her and by displaying affection toward her; that after May 1942 Pizá continued this same conduct of treating the plaintiff as his child, "offering her and her mother to do this in writing in order that the plaintiff might have no difficulties in the future, but it was not possible to effectuate in writing this voluntary action and spontaneous recognition because of the illness of Pizá from which he died". The defendants moved to dismiss the complaint on the ground that it did not state sufficient facts to constitute a cause of action; they also subsequently moved for a summary judgment. The lower court entered judgment for the defendants, and the plaintiff has appealed.

The only substantial point on appeal [1] is whether an adulterous child achieved recognition by her father as a natural child because of the conduct of the father subsequent to the effective date of Act No. 229, Laws of Puerto Rico, 1942 (p. 1296). That Act provides in part in § 1 that "All children born out of wedlock subsequent to the date this Act takes effect, shall be natural children, whether or not the parents could have married at the moment which such children were conceived." This provision on its face operated

---

[1] The plaintiff also claims that the district court did not comply with certain time requirements in setting a hearing on the motion for summary judgment. But she did not object thereto in the lower court, and therefore waived the point. In any event, the view we take of the case requires only an inquiry as to whether the complaint states a cause of action, and we therefore need not explore here the requirements of our Rules as to summary judgment.

prospectively. Section 2, on the other hand, provides in part that "Children born out of wedlock prior to the date this Act takes effect, and who lack the qualifications of natural children according to previous legislation, *may be recognized* for all legal purposes *by the voluntary action* of their parents, and in their default, by that of the persons having the right to inherit therefrom." (Italics ours.)

██ The crucial question here is whether the action of a father subsequent to 1942 in supporting an adulterous child and admitting parenthood result in conferring on such a child born prior to 1942 the status of a natural child; that is, whether those "acts" are the recognition "by the voluntary action" of the father contemplated by § 2 of Act No. 229. In approaching this question, we must bear in mind that the Legislature did not enact this statute in a vacuum. It was passed in the light of our Civil Code, particularly § 125 thereof. This is evident not only from the terms of the statute itself, but also from a colloquy on the floor of the Senate between Senators Géigel Polanco and Iriarte. *Actas del Senado* ,1942, pp. 799–801. To the same effect, Muñoz Morales, Act No. 229 of 1942, and its Implications, "La Toga," issue of October 16, 1944, pp. 6–7.

Section 125 of the Code defines as natural children "those born out of wedlock, from parents who, at the moment when such children were conceived or were born, could have intermarried with or without dispensation." Section 125 then goes on to set up two methods of recognition of a natural child: (1) by the voluntary action of the father "either in the record of birth or in the testament or in any other public instrument"; or (2) by a judicial action in which "The father is *obliged* to recognize the natural child: . . . 2.Where the child has uninterruptedly enjoyed the condition as of a natural child of the defendant father justified by acts of the same father or of his family. . . ." (Italics ours.)

It is therefore evident that under § 125 status as a natural child is conferred (1) voluntarily by the father by a written

instrument only; or (2) involuntarily by a judicial proceeding forcing the putative father to recognize the child if the parent conducts himself in a certain manner. Section 1 of Act No. 229 of 1942 eliminates the barrier of adultery which in the past § 125 has raised against recognition of children as natural children. But § 1 is prospective, and relate only to children born subsequent to the effective date of the Act. And § 2, applying to children born prior to the Act, is narrow; the Legislature was careful in it not to disturb existing relationships. Nevertheless, § 2 does provide that such adulterous children could also be recognized as natural children— but only "by the voluntary action" of their parents.

When § 2 is read in the light of § 125 of the Code, it is obvious that the acts and statements of the father subsequent to 1942 described in the complaint herein admitting parenthood are not the "voluntary action" contemplated by § 2. Voluntary action, as § 125 indicates, means execution by the father of a birth certificate, deed, or other public instrument. The allegations of the complaint might well have entitled the plaintiff under § 125 to force her father to recognize her involuntarily as his natural child pursuant to a judicial order to that effect, if she had not been an adulterous child. But § 2 of Act No. 229, in providing for possible recognition of adulterous children who, like the plaintiff, were born prior to May 1942, limits this to recognition by voluntary action only, within the meaning of that phrase in § 125 (*Actas del Senado, supra,* Muñoz Morales, *supra*). This requires a recordation, will, or other public instrument by the father. And that did not occur here.

The judgment of the district court will be affirmed.